IN THE SUPERIOR COURT OF GUAM BY:_____

| | |
|---|---|
| IN THE MATTER OF THE ESTATE<br><br>OF<br><br>IGNACIO CHACO REYES,<br><br>Deceased. | Superior Court Case No. <u>PR0032-88</u><br><br>**DECISION AND ORDER RE PETITION FOR SALE OF ESTATE PROPERTY** |

The Court here considers the Petition by the Administrator Anthony B. Reyes to sell the sole asset of the Estate of Ignacio C. Reyes. Having heard from the Administrator and giving all heirs an opportunity to provide written and oral arguments on their positions, the Court finds that the sale of the estate property is both necessary and to the estate's advantage, benefit, and best interests. The Court therefore GRANTS the petition.

## I. PROCEDURAL BACKGROUND

Ignacio passed away in 1970. In 1988, Ignacio's daughter, Jennifer, sought an appointment to serve as the administrator of his estate. Pet. Letters Admin. (Mar. 2, 1988). At the time, then-Attorney Joaquin V.E. Manibusan, Jr. represented Jennifer as the proposed administrator. Jennifer noted that a spouse and nine (of ten) children survived Ignacio. Pet. Letters Admin. After furnishing proof of service upon all heirs, and there being no objection to her appointment, the Court granted Jennifer's petition. Receipt for Certified Mail (Mar. 14, 1988); Renunciation of Appointment, Nomination and Consent (Mar. 2, 1988); Order Appointing Adm'x (Apr. 4, 1988).

Jennifer proceeded to publish a notice to creditors. Not. Creditors (May 4, 1988); Aff. Posting (July 5, 1989); Aff. Publication (June 22, 1989). This matter then sat without any activity for thirty years.

In August 2019, Ignacio's son, Anthony, petitioned to be appointed as the administrator. He had representation by pro bono counsel, Attorney Theresa Rojas. Anthony served notice of his petition on all heirs as well as published and posted the notice of his petition and the hearing. Decl. Mailing (Sep. 23, 2019); Decl. Posting (Sept. 23, 2019); Decl. Publication (Sept. 23, 2019). His counsel also furnished a verified resignation signed by Jennifer. Resignation of Adm'x (Oct. 14, 2019). There being no objections to Anthony's petition, and the Court finding that he qualified to serve as Administrator, the Court granted his petition. Order Appointing Adm'r (Nov. 21, 2019).

Anthony then filed an Inventory and Appraisement which indicated one estate asset: Lot 198-NEW-1, Municipality of Agat, Guam, as a Single Family Residence containing a land area of 5,580 square meters, and building area of 800 square feet. Anthony further produced a Guam Department of Revenue and Taxation Certification of Real Property Value indicating a land value of $129,020.00 and a building value of $10,920.00. Inventory and Appraisement (July 15, 2020).

In his first report, Anthony asked to distribute the lot to himself. First and Final Account and Rep. Adm'r and Pet. Final Distribution (Nov. 9, 2020). However, shortly thereafter, he asked to sell the estate property. Pet. Sell Estate Prop. (Jan. 11, 2021). Anthony noted several issues with the property, on which he resided from 1976 to 2003: the building lacks a roof, is not habitable, sits on wetlands, and cannot reasonably and usefully be divided among ten heirs and groups of heirs. Pet. Sell Estate Prop. ¶ 3.

At the January 27, 2021 hearing on the petition to sell the property, other heirs appeared and voiced their preferences to explore options other than selling the property, such as leasing it. Minute Entry (Jan. 27, 2021). After hearing from Anthony and all appearing heirs, the Court partially granted the petition in that it allowed the retention of a real estate broker to list the property and examine the option of leasing the property. *See* Order After Hearing (Feb. 11, 2021).

Anthony obtained and filed a report from Eileen Agahan, a licensed real estate agent. Cover Sheet for Submission of Doc. (Mar. 23, 2021). Agahan opined on whether the property could be successfully leased for an extended period. Her research revealed that within the prior year, there were no active land listings in Agat and no record of leases of land in Guam. She did find a pending lease for a three-acre-sized property in the Marbo Cave area of Mangilao at the rate of $1,250.00 per month. She also researched land sales within the prior year and found five Agat properties that sold and fourteen Agat properties still on the market. Based on her review, Agahan recommended that the Estate's property be sold rather than leased. She also commented that investors prefer to buy rather than lease. In addition, Agahan reported that the estate received a cash offer a few weeks after it listed the property for sale.

At a Status Hearing on May 26, 2021, Rojas confirmed that the Estate received an offer and that the Administrator wished to proceed with the sale. However, some of the heirs continued to express their objections on grounds that they did not consent to the Estate's administration. The Court instructed that if there was a particular offer for the Court's consideration, Rojas must file it with the Court and give notice as well as an opportunity for objections to be filed.[1]

---

[1] This offer has not been presented to the Court for approval.

Anthony then obtained and filed an appraisal. Cover Sheet for Submission of Doc.: Appraisal Rep. (Sep. 10, 2021). The appraiser estimated the property's value at $275,000.00, but potentially significantly more with site development.

Anthony also retained new counsel, Attorney Georgette Concepcion with Brooks Concepcion Law, P.C. Substitution of Counsel (Sep. 22, 2021).

Following the submission of the appraisal, the Court invited all heirs to submit written statements and appear at a hearing on the petition to sell the property. The Court held the hearing on January 14, 2022,[2] and heard from the Administrator and the appearing heirs. *See* Adm'r's Position Statement (Nov. 3, 2021); Decl. Clare C. Leon Guerrero re Affs. Received Via Email (Nov. 8, 2021); Decl. Clare C. Leon Guerrero re Aff. Iva Brown (Nov. 19, 2021); Decl. Clare C. Leon Guerrero re Aff. Lydia Reyes-Wright (Nov. 19, 2021); Adm'r's Supp. Position Statement (Dec. 1, 2021); Minute Entry (Dec. 14, 2021); Minute Entry (Jan. 14, 2022). Some heirs supported the sale; others continued to object.

Those supporting the sale indicated that the property cannot be divided among the many heirs, some of whom have never visited or lived on Guam; that it is questionable about who can continue to maintain the land and pay the taxes; and that they wished to place this issue to rest. Moreover, the Administrator asserted that the sale was necessary in order to pay the Estate's legal fees and the costs of the administration.

The heirs objecting to the sale cite several bases. First, they believe that the property could generate more money in the future based on a proposed hotel development down the street and the property's proximity to Naval Base Guam during this time of military buildup. As an example, they point to offers of between $7 and 10 million received by the family in the 1990s.

---

[2] The Court originally noticed the hearing for December 14, 2021. However, because only two heirs (including the Administrator) appeared, the Court determined that notice may not have been successfully completed. The Court ordered the Administrator to re-serve notice of the next hearing. At least nine heirs appeared at the next hearing on January 14, 2022.

Second, they state that the Administrator made no effort to lease the property as some heirs had suggested. Third, the objecting heirs advise that they have "discussed starting a corporation to create a business on the property with each heir receiving income from proceeds from the business. The ideas that were brought up was an apartment building, an event pavilion complete with full kitchen for weddings, anniversaries, birthday parties, etc." Decl. Clare C. Leon Guerrero re Affs. Received Via Email, Aff. Frances M.B. Hills. And fourth, these heirs claim they did not consent to this administration and feel "blindsided" by the prospect of losing their familial property.

## II.    LAW AND DISCUSSION

Estate property may be sold when necessary to pay for debts, legacies, family allowances, or expenses, or for the advantage, benefit, and best interest of an estate and those interested therein. 15 GCA § 2311(b). Under this law, a Court reviews whether a sale is either necessary or advantageous to the estate and its heirs.

The Court first examines whether the sale is necessary. A sale is "necessary" when required to satisfy the estate's obligations. 15 GCA § 2311(a), (b). Guam law recognizes the expenses of a probate administration as an obligation of the highest priority. 15 GCA § 2727. Accordingly, this thirty-four-year-old case has incurred probate administration expenses which are statutorily pre-determined. For illustration as to the possible extent of such expenses, accepting the appraisal price of $275,000.00, the Court's closing fees would be approximately $5,450.00, attorney's fees permitted by statute may be approximately $5,675,[3] and the Administrator could claim (or waive fees) of approximately $5,675. 15 GCA §§ 2803, 2811.

---

[3] This is the calculation under the formula prescribed by 15 GCA § 2803; it does not take into account extraordinary attorney's fees which may be claimed for work performed on sales of real property and "litigation in regard to the property of the estate." Also, fees have been incurred by two of the three firms that have represented the Estate. The Court has not addressed whether there will be an apportionment of the attorney's fees or a reduction of fees based on the pro bono work done by Attorney Rojas. However, the Court is inclined to apportion fees that take into account services performed on a pro bono basis.

The Administrator also claims that he has paid for additional expenses and seeks reimbursement in the amount of $3,244.40. Adm'r's Supp. Position Statement at 2 (Dec. 1, 2021).

The Administrator states that there are no Estate assets to pay these administration costs. The Court recognizes California caselaw--from which Guam's probate code derives--holding that a sale is not appropriate just to generate cash for distribution. *In re Estate of Canfill*, 238 P.2d 67 (Ct. App. 1951). However, Guam caselaw indicates that a sale qualifies as "necessary" when no other alternatives to pay statutory debts are proposed (such as when heirs pay such fees out-of-pocket). *In the Estate of Perez*, 2005 Guam 27 ¶ 41 ("the interested parties are free to come to an agreement in order to obviate the necessity of a sale"). Here, however, none of the heirs have devised a plan to pay such fees outside of the sale of the Estate's asset. While there were discussions to lease the property or to start a business or family corporation, no plan of any sort was presented to the Court despite a full year having passed since this issue of selling the property first arose. Accordingly, because there are no other resources offered to pay administration expenses and attorney's fees, the Court finds that a sale is necessary.

Second, and alternatively, the Court examines whether the sale is to the estate's advantage, benefit, and best interest. One recognized advantage is the prevention of distributing fractional interests, particularly for an estate that cannot be subdivided. In *Estate of Barthelmess*, 243 Cal. Rptr. 832 (Ct. App. 1988), the estate's property was too small to be partitioned among three heirs. Therefore, the appellate court affirmed the trial court's finding that the sale was of the advantage to the estate. Likewise, here, the property which spans roughly less than an acre and a half cannot be divided among the ten-plus heirs and groups of heirs, many of whom are in the family's third generation.[4] The sale of the property, rather than its impossible distribution among the many heirs, is therefore to the estate's advantage.

---

[4] One of the heirs passed away in the course of the litigation over the sale of the property.

The Court now addresses some of the arguments offered by the heirs objecting to the sale. First, some of the heirs wish to offer the property for lease. In the one year since this issue was raised, no lease offers were presented, and potentially no lease offers were pursued. Even so, the Court accepts Agahan's report that no vacant land in any village on Guam has been leased in the year preceding her report. Agahan also reported that a three-acre property in Mangilao is pending a closing. However, that lease amount is $1,250.00 per month; even if the present estate's land (which is half the size of the Mangilao property) can be leased for the same amount, the funds would not generate substantial funding for the Estate so as to justify a long-term lease over an outright purchase.[5]

Second, some of the heirs claim that this case was initiated without their consent. They believe that because property taxes were being paid, it was unnecessary to put the estate into probate. The Court notes that in both 1988 and in 2019, the Court received information that all heirs received copies of the respective petitions. Receipt Cert. Mail (Mar. 14, 1988); Aff. Mailing (Mar. 11, 1988); Decl. Mailing (Sept. 23, 1989). However, the Court received no objections to the petition to open this probate case, or to appoint Anthony as the Administrator. Also, in the thirty-four years that this case has been pending--including the thirty years it sat dormant--there has been no motion to dismiss this matter.

Furthermore, the title to the property at issue does not rest permanently with Ignacio even if his heirs had taken no court action or dismissed this case. Under Guam law, "[u]pon a person's death, title to such person's property, real and personal, passes immediately to the person or persons to whom it is devised or bequeathed by such person's last will, or, in the absence of such disposition, to the person or persons who succeed to such person's estate . . . ." 15 GCA §

---

[5] Some of the heirs complained that if the property is sold, they would each gain roughly $7,000. However, if the property was leased at $1,250 per month (or $15,000 per year), the heirs at the highest generation level would earn about $1,500 per year.

1401(a); *see also Hemlani v. Nelson*, 2000 Guam 20 ¶ 20 ("at death, title passes immediately . . . in accordance with intestate succession"). The Superior Court then is empowered to control the "administration, sale, or other disposition" of "all of such person's property." 15 GCA § 1401(b). Under these provisions, the title to Ignacio's property has already been passed to his heirs, and this probate administration oversees the distribution and disposition of that property. *See, e.g., Matter of Estate of Esteban by Tenorio*, 2014 Guam 30 ¶ 24 (when decedents passed, their interest in property immediately passed to their daughter). This probate action facilitates the transfer of the estate's assets, and its dismissal or closure only delays the inevitable and necessary administration of Ignacio's Estate.

Finally, some heirs suggest waiting until there is a more favorable offer. They also contend that a hotel will be built nearby, causing an increased property value. The appraisal recognizes that the property could generate significantly more revenue with greater nearby development. The Court acknowledges these concerns but finds that if there is an offer that approximates the current appraised value, it is important this matter come to a close rather than wait on hypothetical market swings that may prolong this case for decades more to come.

## III.   **CONCLUSION AND ORDER**

The Court concludes that the sale of the estate property is both necessary and to the estate's advantage. The Administrator's petition is GRANTED and he is authorized to proceed with the sale. However, the Administrator must still seek confirmation of any sale pursuant to Title 15, Chapter 23 of the Guam Code Annotated, and provide notice of the hearing to confirm the sale to all heirs.[6]

The Administrator is ORDERED to serve this Decision and Order on all heirs who have appeared in these proceedings.

---

[6] Heirs who continue to object to the sale of the property are advised of 15 GCA § 3433 and Guam Rule of Appellate Procedure 4 concerning the right to appeal an order directing the sale of estate property.

SO ORDERED this 8th day of February 2022.

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorney:
Georgette Bello Concepcion, Esq., Brooks Concepcion Law, P.C., for Petitioner Anthony B.
    Reyes